**Mariann L. HILL, Petitioner,**

v.

**DISTRICT UNEMPLOYMENT COMPEN-SATION BOARD, Respondent.**

**No. 6344.**

District of Columbia Court of Appeals.

Submitted Oct. 24, 1972.

Decided March 29, 1973.

Mariann L. Hill, pro se.

Russell L. Carter, Washington, D. C., with whom George A. Ross and Bill L. Smith, Washington, D. C., were on the brief, for respondent.

Before PAIR, YEAGLEY and HARRIS, Associate Judges.

PAIR, Associate Judge:

By this petition for review, petitioner has challenged for the third time an order of the District of Columbia Unemployment Compensation Board (the Board) denying her unemployment benefits for the period commencing March 9, 1970, and ending May 31, 1970.[1]

The case was brought here for the first time after the Board, by resolution entered June 9, 1970, denied petitioner unemployment benefits for the period involved. The Board's resolution affirmed a decision of its appeals examiner who concluded, from the record made at a hearing conducted by an Illinois hearing referee pursuant to a reciprocal agreement,[2] that petitioner had not been available for work during such period as required by D.C. Code 1967, § 46–309.

Upon examination of that record it appeared to be so inadequate and incomplete that meaningful judicial review of the Board's resolution and order was impossible. We therefore and without reaching the merits, remanded the record to the Board [3] with directions to make and certify to the court appropriate findings of fact and conclusions of law as required by the District of Columbia Administrative Procedure Act (D.C.APA), D.C.Code 1967, § 1–1501 et seq. (Supp. V, 1972).

Responsive to our mandate, the Board prepared and submitted to the court detailed findings of fact and conclusions of law from which it again concluded that petitioner was not entitled to unemployment benefits for an indefinite period commencing March 1, 1970.

Petitioner again complained to this court respecting the Board's disposition of her claim. Upon our review of the administrative record, it appeared that the findings of fact upon which the Board based its order were without any significant support in the testimony adduced at the hearing before the Illinois hearing referee.[4] Thus the court, being unable to make a considered judgment as to whether there had been a fair hearing and a result supported by substantial evidence, reversed the decision of the Board and remanded with directions to grant petitioner a new hearing on her claim for unemployment benefits.[5]

Thereafter and pursuant to a reciprocal arrangement, a State of Illinois hearing referee conducted on December 4, 1971, a

---

1. Petitioner on February 20, 1970, resigned from her employment in the District of Columbia and moved with her husband to a mobile home in a suburb of Chicago, Illinois. On March 2, 1970, she filed an interstate claim for unemployment benefits. The Board, no doubt after consideration of D.C.Code 1967 § 46–311(b), made an initial determination of eligibility and, by letter under date of March 10, 1970, advised petitioner that she was entitled to benefits of $55 weekly. It does not appear from the record that the determination of eligibility was ever challenged by any party as permitted by that section and Board Regulation 18:302.2 (a). *Cf.* Woodward & Lothrop, Inc. v. D. C. Unemp. C. Bd., 129 U.S.App.D.C. 155, 158, 392 F.2d 479, 482 (1968); Simmons v. District Unemp. C. Bd., D.C. App., 292 A.2d 797 (1972); Riley v. D.C. Unemp. C. Bd., D.C.App. 278 A.2d 691 (1971).

2. D.C.Code 1967, § 46–316.

3. Hill v. D. C. Unemp. C. Bd., D.C.App., 279 A.2d 501 (1971).

4. The findings were based largely upon statements set forth on standard forms and were in substance that, during a period of 12 weeks, petitioner made only 12 personal job contacts " . . . in an area where on two occasions local officials . . . said she should have no trouble obtaining work, although she had been cautioned by this Board to make at least three contacts per week." We have found nothing in the statute, D.C.Code 1967, § 46–301 et seq. or in the Board Regulations which requires a claimant for unemployment benefits to make, as a condition precedent, at least three job contacts weekly.

5. Hill v. D. C. Unemp. C. Bd., D.C.App., 281 A.2d 433 (1971).

new hearing, and on December 6, 1971, transmitted to the Board's appeals examiner a cassette recording of the proceedings.

The Board's appeals examiner reviewed the record of the proceedings [6] and made findings of fact from which he again concluded that petitioner failed, during the period involved, to meet the availability requirements of D.C.Code 1967, § 46–309(d), and was for that reason not entitled to unemployment benefits. The Board, concluding upon review of the record that the decision of the appeals examiner was supported by the evidence, resolved on May 2, 1972, to adopt as its own the findings and conclusions upon which the decision of the appeals examiner was based. Such findings and conclusions of the Board are, of course, conclusive upon this court if supported by evidence in the whole of the administrative record. D.C.Code 1967, § 46–311(f). *See* AEM, Inc. v. Ecke, 106 U.S.App.D.C. 240, 271 F.2d 506 (1959). We proceed, therefore, to consideration of petitioner's contention that the decision of the Board is not supported by the evidence.

The pertinent findings as recited in the Board's resolution of May 2, 1972, are in substance that petitioner's testimony and that of her two witnesses is in conflict with statements set forth in the "IB–2 reports" filed by petitioner with the Illinois Bureau of Employment Security. Specifically, the Board's findings were that, although counseled to search diligently for employment, petitioner, by her own admissions, made, prior to May 9, 1970, an average of only one job contact weekly and thereafter only two such contacts.

Uncontroverted at the hearing, however, was petitioner's testimony, corroborated by her two witnesses, that she was available for work during the entire period; that she had made constant effort to obtain employment; that she had registered with both the Illinois local and state employment agencies; and that, in addition, she had made numerous job contacts. Uncontroverted also was petitioner's testimony that she had been instructed to list only the job contacts who accepted her application for employment and that later, when she was instructed to list all job contacts whether or not her application was accepted, she complied.

Petitioner concedes that during the weeks ending March 7 and 21, 1970, respectively, she was handicapped in her search for employment—first, because of difficulty in obtaining transportation to the job markets; and, secondly, because of problems in respect to heating and utilities which developed when she moved into her new home. Petitioner stated, however, that when she found that transportation was available in the nearby city of Harvey and "learned how the buses ran and everything", she made job contacts as far away as Chicago.

The Board seems to have recognized that petitioner experienced these difficulties because in its findings it made much of such difficulties and the fact that petitioner's new home was about one mile from public transportation.

Significantly enough, there is no showing in the record whatsoever that the Board, in disposing of petitioner's claim, considered whether under the circumstances there was good cause for petitioner's failure to comply fully, during the two weekly periods, with the requirement of

---

6. The administrative record consisted of (1) the standard forms identified as "IB–2 reports" upon which petitioner was required to report weekly the number, nature and date of each job contact, and (2) the testimony of petitioner and her witnesses adduced at the hearing conducted on December 4, 1971, by the Illinois hearing referee. When we first considered this matter we observed that many of the standard forms, prepared as they were by an Illinois claims taker, contained illegible cryptic notes.

availability.[7] Moreover, and compounding the difficulty we face in reviewing the Board's findings and conclusions, is the absence of a report or comment by the Illinois hearing referee in regard to any conflict or inconsistency between the testimony of petitioner and her witnesses at the hearing and statements—attributed to petitioner—set forth on the interstate claim forms. *See* Board Regulation 18:305.6.

Involved, therefore, is substantially the same problem confronted and disposed of by the court in Simmons v. District Unemployment Compensation Bd., D.C.App., 292 A.2d 797 (1972), where, as here, neither the Board nor its appeals examiner heard the testimony or was in a position to judge the credibility of the witnesses.

Quoting with approval from the Administrative Law Treatise of Professor Davis,[8] we said in *Simmons, supra* at 800:

> The Supreme Court has admonished generally that "[t]he one who decides must hear." Morgan v. United States, 298 U.S. 468, 481, 56 S.Ct. 906, 912, 80 L.Ed. 1288 (1936). This court has recognized that when opportunity on the part of an administrative board to hear the witnesses and "observe their demeanor in the act of testifying" is lacking, *and* "weight and credibility of witnesses" is involved, due process is also lacking. Feldman v. Board of Pharmacy of District of Columbia, D.C.Mun.App., 160 A. 2d 100, 103 (1960). *See* Shawley v. Industrial Commission, 16 Wis.2d 535, 114 N.W.2d 872, 875–876 (1962).

Because any final disposition on this record must be controlled by *Simmons, supra,* and Feldman v. Board of Pharmacy of District of Columbia, D.C.Mun.App., 160 A.2d 100 (1960), it would in our view be unrealistic to expect that another hearing before an Illinois hearing referee would be productive of a useful result. Moreover, considerations of fundamental fairness persuade us that petitioner, now a resident of the State of Illinois, should not at this late date be required to attend, with her witnesses, a hearing on her claim conducted by the Board in the District of Columbia.

Thus, we come to the final stage of litigation which began when the Board, without apparent regard for the provisions of D.C.Code 1967, § 46–311(b), and its Regulation 18:302. and without any good cause disclosed by the record, refused to honor its initial and unchallenged determination made March 10, 1970, that petitioner was entitled to unemployment benefits, subject of course to compliance with D.C.Code 1967, § 46–309.

But litigation, like controversy, must end sometime. Accordingly, we reverse the Board's decision, and remand to the Board

---

7. D.C.Code 1967, § 46–309. Eligibility for benefits.

An unemployed individual shall be eligible to receive benefits with respect to any week only if it has been found by the Board—

. . . . .

(d) that he is available for work and has registered and inquired for work at the employment office designated by the Board, with such frequency and in such manner as the Board may by regulation prescribe: *Provided, That failure to comply with this condition may be excused by the Board upon a showing of good cause for such failure* . . . . [Emphasis supplied.]

8. *But when oral testimony is in conflict, so that findings may depend on demeanor, the decision should not be made by officers who have not been present at the hearing unless those officers have the benefit of a report by the officer who saw and heard the witnesses* . . . . The question whether demeanor in any particular case is of sufficient importance to require a report by the presiding officer is of course for the agency to determine, and a reviewing court should uphold a determination that a report is unnecessary except when the record clearly shows that fairness requires consideration of the demeanor element. 2 K. Davis, Administrative Law Treatise § 11.18, at 113 (1958).

with directions to pay petitioner full benefits to which her unemployment entitled her for the period commencing March 9, 1970, and ending May 31, 1970.[9]

So ordered.

HARRIS, Associate Judge (concurring in part and dissenting in part):

I agree with the majority that the Board erred in this case in effectively disregarding petitioner's sworn testimony before the Illinois hearing referee without having the benefit of any findings or any type of a credibility evaluation from that referee. Nonetheless, I respectfully dissent from the majority's direction to the Board "to pay petitioner full benefits."

When a claim is made for unemployment benefits, an initial determination as to a claimant's apparent entitlement is made by the Board under D.C.Code 1972 Supp., § 46–311(b). Such a determination is essentially a mathematical computation, based upon a claimant's wage and employment record for a base period.[1]

In addition to providing that an initial determination shall be made as to a claimant's benefits, among other provisions the amended § 46–311(b) states:

If, subsequent to such initial determination, benefits with respect to any week for which a claim has been filed *are denied for reasons other than matters included in the initial determination,* the claimant shall be promptly notified of the denial and the reasons therefor, and may appeal therefrom . . . . (Emphasis added.)

In this case, the Board's decision apparently denied benefits to the petitioner for the period March 7 through June 6, 1970. As described in the preceding opinion, the basis for such a denial was the Board's conclusion that petitioner was not sufficiently active in seeking employment during that period, and hence was ineligible to be paid the benefits to which she otherwise would have been entitled. D.C.Code 1967, § 46–309(d).[2]

The inclination to agree with bringing the entire proceeding to a conclusion is strong. Considering the costs to the government of petitioner's three appeals to this court and the intervening agency proceedings, it is apparent that the denial of a portion of petitioner's benefits has been many times more burdensome economically than the payment thereof would have been.[3] Nonetheless, it is the Board, rather than this court, which is empowered to determine eligibility under § 46–309. In my view, our role ends when we determine whether or not the Board committed reversible error. Having concluded that it did, I believe that we should not go beyond remanding the case for further application of the Board's expertise. *E. g.,* Federal Communications Commission v. Pottsville Broadcasting Co., 309 U.S. 134, 60 S.Ct. 437, 84 L.Ed. 656 (1940); McBride v. Smith, 405 F.2d 1057 (2d Cir. 1968). Such a belief is reinforced in this case by the fact that the record makes it difficult, if not impossible, to determine definitively the precise period for

---

9. Simmons v. District Unemp. C. Bd., D.C. App., 292 A.2d 797 (1972).

1. This assumes the accuracy of the information given to the Board by the claimant. If the information is inaccurate, a claimant's former employer is entitled to be heard. *Id.*

2. Subsequent to that particular period, in the Board's view, petitioner's employment-seeking activities were sufficient to sustain her eligibility. She received a total of 11 weekly checks in the amount of $55 each. Those payments terminated

when she became employed on August 25, 1970.

3. It should be stressed, however, that the Board has an obligation to scrutinize claims carefully, and to limit the payment of benefits to those to which a claimant legitimately is entitled. As expressed by the Supreme Court of New Jersey in Krauss v. A. & M. Karagheusian, Inc., 13 N.J. 447, 100 A.2d 277, 281 (1953):

The basic policy of the law is advanced as well when benefits are denied in improper cases as when they are allowed in proper cases.

which petitioner was denied benefits. Accordingly, I respectfully dissent from the majority's direction that the Board pay benefits to the petitioner for the period in question.[4]

Charles T. Duncan and Richard J. Medalie, Washington, D. C., for petitioner.

C. Francis Murphy, Corporation Counsel, and Kenneth R. West and Henry E. Wixon, Asst. Corporation Counsels, for respondent.

Before REILLY, Chief Judge, and FICKLING and NEBEKER, Associate Judges, in chambers.

4. It is recognized that benefits were ordered by this court to be paid in Simmons v. District Unemployment Compensation Board, 292 A.2d 797 (1972). However, that case is factually distinguishable from this one. In *Simmons*, the claimant had been discharged from his employment, and the Board relied upon evidence of misconduct to disqualify him for benefits for six weeks under D.C.Code 1967, § 46–310

(b). This court concluded that the burden of proving misconduct was on the employer. The court's holding that the burden had not been met removed the misconduct disqualification, thereby making payment of the benefits appropriate.