Susan HAKES, Plaintiff-Appellant,†

v.

LABOR & INDUSTRY REVIEW COMMISSION, Spectrum Industries, Inc. and Hartford Accident & Indemnity Company, Defendants-Respondents.

Court of Appeals

*No. 94–1010–FT. Submitted on briefs August 8, 1994.—Decided September 20, 1994.*

(Also reported in 523 N.W.2d 155.)

†Petition to review denied.

For the plaintiff-appellant the cause was submitted on the briefs of *Howard D. White* of *Hertel, White, Johnson & Schilling, S.C.* of Eau Claire.

For the defendant-respondent, Labor and Industry Review Commission, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Lowell E. Nass*, assistant attorney general.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J.    Susan Hakes appeals a judgment confirming an order by the Labor and Industry Review Commission that set aside the findings of the administrative law judge and dismissed her claim for worker's compensation benefits.[1] Hakes claims that she was denied due process because the commission reversed the findings of the hearing examiner on the basis that it disagreed with the hearing examiner's assessment of

---

[1] This is an expedited appeal under RULE 809.17, STATS.

the credibility of various witnesses without creating a sufficient record of its consultations with the hearing examiner regarding the credibility issue. Because we conclude that: (1) The commission properly consulted with the hearing examiner before making its determination on the credibility of the various witnesses; and (2) the procedures utilized by the commission were sufficient to satisfy Hakes' due process rights, we affirm the court's judgment confirming the commission's order.

Susan Hakes alleges that on June 23, 1988, she sustained an injury while working in the packaging department of Spectrum Industries, a furniture manufacturing corporation. Hakes claims that she was standing atop a pile of cardboard inserts that were stacked approximately eight to ten feet high when the pile began to tip. As a result, Hakes alleges that she was forced to jump from the pile to the ground. Hakes claims that when she hit the ground, she felt extreme pain and numbness in her left leg and that she had pain in her lower back. Approximately two weeks later, on July 8, 1988, Hakes sought medical treatment for her alleged injury from her treating physician, Dr. M.W. Asplund. Dr. Asplund concluded that Hakes' alleged injuries were a result of her fall on June 23, 1988.

On October 25, 1989, Hakes was injured a second time while lifting cabinets at work. Hakes sought treatment for this injury from Dr. John Larson, who concluded that Hakes did suffer a work-related injury in June 1988 and that her first injury predisposed her to the second injury. Dr. Larson's opinion was subsequently confirmed by Dr. Thomas Bieter.

On June 17, 1991, however, Hakes was examined by Dr. David Ketroser. Based on his examination of

Hakes, he concluded that Hakes was malingering, that she was magnifying her symptoms and that her complaints were due to exaggeration and not a work-related injury in either June 1988 or October 1989. Dr. Ketroser further noted that Hakes had undergone numerous objective tests, none of which revealed any significant abnormalities in her condition.

On September 30, 1991, a hearing was held to determine: (1) Whether the injuries Hakes allegedly incurred on June 23, 1988, arose from her employment; (2) the nature and extent, if any, of Hakes' disability; and (3) liability for medical expenses. After the hearing, the hearing examiner found the opinions of Dr. Asplund and Dr. Bieter to be credible and therefore concluded that Hakes did suffer a work-related injury on June 23, 1988.

On November 27, 1991, Spectrum filed a petition to have the findings and order of the hearing examiner reviewed by the commission. In its petition, Spectrum claimed that the hearing examiner's findings were not supported by credible and substantial evidence. Alternatively, Spectrum alleged that the findings were contrary to Wisconsin law.

The commission reviewed the hearing examiner's determination, consulted with the examiner in regard to his determinations of credibility and ultimately issued an order reversing the examiner's award of benefits to Hakes. The commission determined that while the examiner generally found Hakes credible, there were numerous inconsistencies in Hakes' testimony and the report of injuries she supplied to her employer and physicians. The commission was also persuaded by Dr. Ketroser's conclusion that Hakes was malingering and magnifying her symptoms. Based upon the inconsistencies in Hakes' testimony and the conclusions of

585

Dr. Ketroser, whom the commission found to be the most credible medical expert, the commission reversed the award made by the hearing examiner and dismissed Hakes' petition for benefits. Hakes subsequently filed a complaint for judicial review of the commission's order. The trial court confirmed the commission's order, and Hakes appeals.

Hakes contends that due process of law entitled her to more than the commission's purported consultation with the hearing examiner before the commission rejected the examiner's credibility determinations. Hakes argues that the record must disclose who consulted with the hearing examiner, when the consultation was made and how the consultation proceeded. Further, Hakes contends that under *Mathews v. Eldridge*, 424 U.S. 319 (1976), the commission should adopt a standardized procedure by which its consultations are held. Hakes argues that the adoption of standardized procedures is warranted because the availability of compensation benefits for injured workers is so important and because the effect of a wrong decision has such dire consequences.

The issue is whether the commission's procedures denied Hakes due process of law. This issue involves a question of constitutional fact that we review without deference to the commission. *See State v. Ledger*, 175 Wis. 2d 116, 122, 499 N.W.2d 198, 200-01 (Ct. App. 1993). In reviewing this issue, we note that there is a presumption of regularity in the decisions of administrative agencies. *See Wright v. Industrial Comm'n*, 10 Wis. 2d 653, 662, 103 N.W.2d 531, 535 (1960). Furthermore, we note that Hakes has the burden of showing that the procedures employed by the commission vio-

lated her right to due process of law. *Id.* at 661-62, 103 N.W.2d at 535.

Hakes contends that due process requires the commission to follow an established procedure in consulting with the hearing examiner on credibility determinations. Specifically, Hakes suggests that due process requires the commission to:

(1) establish a time limit for when a hearing examiner may be consulted for impressions of witness credibility;

(2) determine specifically who on the commission or its staff is authorized to consult with the hearing examiner on witness credibility;

(3) adopt a standardized procedure or standardized set of questions when commission official consults with hearing examiner on witness credibility; and

(4) adopt a regulation requiring its hearing examiners to review the record or the written synopsis of the complainant's hearing before the examiner answers commission questions regarding witness credibility.

Hakes, however, does not cite any Wisconsin precedent to support this contention. Furthermore, the procedure advocated by Hakes conflicts with the present state of Wisconsin law.

In *Shawley v. Industrial Comm'n,* 16 Wis. 2d 535, 541-42, 114 N.W.2d 872, 876 (1962), the Wisconsin Supreme Court stated that "[w]here credibility of witnesses is at issue, it is a denial of due process if the administrative agency making a fact determination does not have the benefit of the findings, conclusions, and impressions of the testimony of each hearing officer who conducted any part of the hearing." The

supreme court subsequently expanded *Shawley* in *Transamerica Ins. Co. v. DILHR*, 54 Wis. 2d 272, 284, 195 N.W.2d 656, 663-64 (1972). There, the court stated that when the commission reverses the hearing examiner's findings, particularly where witness credibility is involved, the commission must: (1) Submit a memorandum opinion stating the basis for its rejection of the examiner's findings; and (2) state the reason why it made its own independent finding. In concluding that consultation with the examiner alone is not sufficient to comport with the requirements of due process, the *Transamerica* court stated that "[f]undamental fairness requires that administrative agencies, as well as courts, set forth the reasons why a fact-finder's findings are being set aside or reversed, and spell out the basis for independent findings substituted." *Id.* at 284, 195 N.W.2d at 663.

*Shawley* and *Transamerica* establish the procedures the commission must follow in order to provide a claimant with due process of law. Under *Shawley* and *Transamerica*, due process requires only that the commission consult with the hearing examiner and submit a memorandum opinion explaining its basis for rejecting the hearing examiner's findings. The procedure urged by Hakes, however, goes far beyond the dictates of *Shawley* and *Transamerica*. The procedure she proposes seeks to delve into the mental processes the commission used in making its determinations of fact. The law, however, does not require this. In fact, the supreme court has specifically noted that "administrative agencies ordinarily should not be harassed by judicial inquiry directed toward ascertaining how they performed their adjudicative function in a particular case." *Wright*, 10 Wis. 2d at 661-62, 103 N.W.2d at 535. The law simply does not support Hakes' assertion that

the commission's factual determinations should be subject to more rigorous procedures.

Further, Hakes' claim fails to recognize that the commission, not the hearing examiner, is vested with the responsibility of making credibility determinations. *Valadzic v. Briggs & Stratton Corp.*, 92 Wis. 2d 583, 598, 286 N.W.2d 540, 547 (1979). The hearing examiner may make initial determinations on witness credibility, but these determinations are subject to the commission's independent review. *See State v. Industrial Comm'n*, 233 Wis. 2d 461, 465, 289 N.W.2d 769, 771 (1940). Therefore, because the commission is ultimately responsible for making credibility determinations and because the Wisconsin Supreme Court has already established the procedure the commission must follow to provide a claimant with due process, we conclude that the procedure advocated by Hakes is not necessary to provide due process of law.

Having concluded that *Shawley* and *Transamerica* establish the procedure that the commission must follow to provide a claimant with due process, we must now determine whether the commission satisfied this procedure. The commission's report states that it consulted with the hearing examiner regarding the credibility and demeanor of witnesses prior to making its findings. Furthermore, the report notes at length the various inconsistencies both in the claimant's testimony and the report of injuries she supplied to her employer and physicians. The report also notes that Hakes' treating physician, Dr. Asplund, found that while Hakes complained of back pain, she did not suffer from any limitation of motion, loss of strength or loss of endurance. Based upon these inconsistencies and the fact that Hakes' objective tests showed her to be normal, the commission determined that Dr. Ketroser's

report was the most credible. Therefore, because Dr. Ketroser's report concluded that Hakes was malingering, the commission reversed the hearing examiner's award and dismissed Hakes' petition for benefits.

The detailed recitation of the inconsistencies in Hakes' testimony and report reveal that the commission did much more than choose between conflicting medical opinions. It carefully scrutinized the record and determined, based upon the evidence, that the numerous inconsistencies in Hakes' testimony and report of injuries created a reasonable doubt that Hakes was, in fact, injured. Where there is a legitimate doubt in the mind of the commission regarding the facts necessary to establish a claim, the commission is required to reject the petition for benefits. *Bumpas v. DILHR*, 95 Wis. 2d 334, 343-44, 290 N.W.2d 504, 507-08 (1980). The commission's report clearly illustrated the basis for its doubt as to Hakes' injury, and it fully explained its reason for reversing the hearing examiner's credibility determinations. Furthermore, the report definitively stated that the commission consulted with the hearing examiner before reversing his credibility determinations. Therefore, because the commission's procedures were in accord with *Shawley* and *Transamerica*, we conclude that the record sufficiently revealed the commission's consultation with the hearing examiner and that Hakes received due process of law. The judgment is therefore affirmed.

*By the Court.*—Judgment affirmed.